UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANITA PEREIRA :
    Plaintiff, :
 :
V. : Civil No. 3.09-cv-1537 (PCD)
 :
TARGET STORES, INC. and :
ROD SCHMIDT :
    Defendants. :

## RULING ON SUMMARY JUDGMENT MOTION

Defendants, Target Stores, Inc. ("Target") and Rod Schmidt ("Schmidt"), Target's Store Manager, moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on Plaintiff's two claims of negligence—negligence under traditional premises liability and negligence based on a mode of operation theory of liability. In response to Defendants' Motion for Summary Judgment, Plaintiff withdrew her first claim of negligence but maintains the claim of negligence under the mode of operation doctrine. For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. No. 35] is **granted**.

### I. BACKGROUND[1]

On October 12, 2007, Plaintiff Anita Pereira fell while shopping with her husband Chandler Pereira at the Target Store located in Waterbury, Connecticut. (Def.'s Stmt. of Mat. Facts at ¶ 1.) Plaintiff alleges that a piece of candy on the aisle floor caused her to slip and fall. (Id. at ¶¶ 1-2.)

Immediately before the incident, Plaintiff and her husband were shopping in the cosmetic section of the store to select lotion and shower gel. (Id. at ¶ 9.) After selecting a bottle of lotion

---

[1] The statement of facts that follows is derived from Defendants' Statement of Material Facts [Doc. No. 37]. Because Plaintiff has failed to file her Local Rule 56(a)(2) Statement, the Court takes the facts offered in Defendants' Statement as true and assumes that these material facts are not in dispute.

and a bottle of shower gel, the two exited the cosmetic section and entered the main aisle to shop for items for their dog. (Id.) According to Plaintiff, she did not look down at the floor when she turned into the main aisle, nor did she see anything on the floor before the accident occurred. (Id.) She was carrying the bottle of lotion when she fell. (Id.)

Plaintiff testified that she does not know what caused her to slip and fall. (Id. at ¶ 10.) She also testified that she does not remember if she felt any object under her foot that would have caused her to fall. (Id.) After the fall, she saw a brown object, which was possibly candy, on the floor near her. (Id. at ¶ 11.) She did not know how long the candy or debris was on the floor, and did not know how it ended up there. (Id.)

Mr. Pereira testified that he did not see his wife fall and did not know what caused her to fall. (Id. at ¶ 12.) Although he did not notice anything on the ground at the time Plaintiff fell, he observed the piece of candy on the floor after looking around following the incident. (Id.) Mr. Pereira testified that he did not know how long the candy or debris had been on the ground and that the object did not have any distinctive marks or qualities. (Id.) He also testified that he saw a "kind of white" lotion on the ground near the area where his wife fell. (Id. at ¶ 13.) He did not know if the lotion came from the bottles that Plaintiff had been carrying, which he saw on the ground near her after her fall. (Id.) He did not notice any other objects on the ground. (Id.)

Target employees Robert Lawson and Brendalee Batista responded to the incident. (Id. at ¶ 2.) Neither employee was aware of any candy or debris on the floor prior to the incident, nor had they received any reports from customers or Target employees concerning any debris on the floor prior to the incident. (Id. at ¶¶ 2-3.) Defendant Rod Schmidt, the Waterbury Target Team

Leader and store manager, submitted an affidavit stating that Target had no record of complaints concerning any dangerous conditions in the area of the fall prior to the incident. (Id. at ¶ 4.)

Videotape surveillance supports the Target employees' accounts. (Id. at ¶ 7.) The video shows Plaintiff walking, abruptly falling, and dropping the bottle of lotion that was in her hand. (Id.) The video does not show any debris on the floor at the time of the fall. (Id. at ¶ 7.) Rather, according to the video, the only object on the floor was the bottle of lotion Plaintiff had been carrying. (Id.)

**II. STANDARD**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Railway Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990). "There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" Id. (internal citations omitted)

**III. DISCUSSION**

Plaintiff's complaint alleges negligence causes of action against Defendants based on both traditional premises liability and mode of operation liability. In her opposition to summary judgment, however, she withdrew her claim of negligence under traditional premises liability and conceded that there was no evidence to support Defendants' actual or constructive notice of the defect that caused her to fall. The two remaining counts allege negligence by mode of operation, which dispenses with the requirement of actual or constructive notice of the unsafe condition. Specifically, Plaintiff alleges that "[d]ue to [Target's] mode of operation, it was reasonably foreseeable that items handled by customers would regularly end up on the store aisle floors" and that "defendant[s] . . . failed to enact adequate procedures and take adequate measures to ensure that the store aisle floors were free of items mishandled by customers." (Comp. ¶¶ 5-6.) Thus the viability of Plaintiff's remaining negligence counts depend on whether the mode of operation doctrine applies to this case.

The elements of a cause of action in negligence consist of duty, breach of duty, causation, and actual injury. Maffucci v. Royal Park Ltd. Partnership, 707 A.2d 15, 24 (Conn. 1998). In determining whether the first element is satisfied, the inquiry is twofold: first, the Court must determine the existence of a duty and second, if a duty exists, the Court must evaluate the scope of that duty. Baptiste v. Better Val-U Supermarket, Inc., 811 A.2d 687, 690 (Conn. 2002).

"[T]he owner of a retail store has a duty to keep the premises in a reasonably safe condition for the benefit of its customers. Kelly v. Stop and Shop, Inc., 918 A.2d 249, 255 (Conn. 2007).

> Typically, '[f]or the plaintiff to recover for the breach of a duty owed to [her] as [a business] invitee, it [is] incumbent upon [her] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition

> which caused [her injury] or constructive notice of it.... [T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it'. . . . In the absence of allegations and proof of any facts that would give rise to an enhanced duty . . . [a] defendant is held to the duty of protecting its business invitees from known, foreseeable dangers.

Baptiste, 811 A.2d at 691 (quoting Monahan v. Montgomery, 216 A.2d 824, 826 (Conn. 1966)).

However, under the mode of operation doctrine, "a plaintiff establishes a prima facie case of negligence upon presentation of evidence that the mode of operation of the defendant's business gives rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk." Kelly, 918 A.2d at 263. Under the doctrine, "a customer injured due to a condition inherent in the way [a] store is operated" may recover without establishing the existence of actual or constructive notice of the dangerous condition. Id. at 256 (internal citations and quotations omitted). In Kelly, the Connecticut Supreme Court applied the mode of operation doctrine to a negligence action involving a plaintiff who had slipped on a piece of lettuce located in a self-service salad bar area of a supermarket. Id. at 252-53. The store manager testified that the area around the salad bar was precarious because customers often dropped items from the salad bar on the floor. Id. at 264. In addition, the supermarket had a policy of stationing an employee at the salad bar to keep the area clean and safe. Id. In applying the mode of operation doctrine and thus dispensing with plaintiff's burden of proving the supermarket's notice of the dangerous condition, the court found that there was adequate evidence to permit a finding that the salad bar area created a foreseeable risk of danger to the customers.

Subsequently, however, the Connecticut Supreme Court emphasized the narrow application of the mode of operation doctrine. It explained that:

> [t]he exception is meant to be a narrow one, and applies only to those areas where risk of injury is continuous or foreseeably inherent in the nature of the business or mode of operation. . . . Thus a plaintiff who slips and falls in a grocery store cannot survive summary judgment by merely raising the inference that the substance causing her fall came from within the store; rather, the plaintiff must show that such spills were *foreseeable in the specific area where she fell.*

Fisher v. Big Y Foods Inc., 3 A.3d 919, 934 (Conn. 2010) (emphasis in original) (internal citations and quotations omitted). In Fisher, the court declined to apply the mode of operation doctrine when a plaintiff slipped and fell on a puddle of liquid, which the plaintiff claimed originated from a fruit cup sold within the supermarket, concluding that it is a modern day reality that all retail establishments operate in a self-service manner and that the only method of operation is to place items on shelves for customer selection and removal. Id. Consequently, the court held that "a defendant cannot be considered negligent solely on the ground that it has employed that method." Id. at 934-35. The court concluded that unless a plaintiff shows that "a particular mode of operation made the condition occur regularly or rendered it inherently foreseeable, the plaintiff must proceed under traditional premises liability doctrine," which requires that he demonstrate that the defendant had actual or constructive notice of the particular hazard. Id. at 935.

Here, Target's mode of operation did not make it foreseeable that the floors were of such a condition as to lead to customers slipping and falling. Unlike the plaintiff in Kelly, there is no evidence here that Plaintiff slipped and fell in a zone of risk, such as a salad bar, or that Plaintiff slipped and fell on an object that originated in a zone of risk. Nor is there any evidence that

6

Target's mode of operation created any other regularly occurring hazardous condition in the area in which Plaintiff fell. Target employees testified that there were no prior complaints or reports of candy or debris on the aisle floors. (Def.'s Stmt. of Mat. Facts at ¶¶ 2-4.) Plaintiff has failed to present any evidence of the origin of the object on which she claims to have slipped, and even testified that she did not know what actually caused her to slip and fall. (Id. at ¶ 10.) Because there was nothing particularly dangerous about Target's method of offering packaged items for sale that would have made the existence of debris or spillage inherently foreseeable or regularly occurring, the facts of the present case cannot support a negligence claim under the mode of operation doctrine. As such, Plaintiff's negligence claim based on a mode of operation theory of liability must fail.

### IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. No. 35] is granted.

SO ORDERED
Dated at New Haven, Connecticut, this  10th  day of June, 2011

/s/
Peter C. Dorsey, U.S. District Court Judge
United States District Court